**PLATTE et v STEPHENS et**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1496. Decided July 22, 1938

Frank W. Krehbiel, Dayton, and Eugene Lippincott, Lima, for plaintiffs-appellants.

Nicholas F. Nolan, Dayton, and Sam Kelly, Dayton, for defendants-appellees.

## OPINION

By BARNES, PJ.

The above entitled cause is now being determined on proceedings in error by virtue of plaintiffs' appeal on questions of law from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

The case involved the contest of the will of John W. Johnson, deceased. The decedent at the time of his death was nearly eighty-six years of age. The paper writing purporting to be the will of decedent was executed approximately two years prior to his death. He left property of the approximate value of $300,000.00. At the time of his death he was unmarried, his wife having preceded him in death some twenty-five years. He left no children or other descendants. His surviving relatives and next of kin were second and third cousins.

The major portion of his estate consisted of investment stocks of various types and character, including which was approximately 175 shares (par $100.00) of stock of the J. W. Johnson Company of which he was the president and directing head. He left real estate of the appraised value of $79,000.00, consisting of his dwelling house on Monument Avenue, appraised at $9,000.00, and a factory building

on North Jefferson Street, appraised at $70,000.00.

He held personal notes in varying amounts against several of his next of kin, totaling $4400.00, all being cancelled under the provisions of the will.

Horace L. Stephens and his sister, Emma Stephens McCallum, both stockholders and business associates for a very long period of time, receiver very substantial bequests. Both held very responsible positions in the business enterprise and had much to do with its successful operation. In addition, Mrs. McCallum acted as private secretary for the decedent for a number of years before his death. Horace L. Stephens was named executor of the will.

Twenty-one plaintiffs, all being either second or third cousins, joined in the petition to contest the will.

The executor, all devisees and legatees under the will, and all next of kin not joined as plaintiffs, were made defendants.

The ground of contest as set out in the petition, is contained in the following allegation:

"Plaintiffs say that said paper writing is not the last will and testament of said John W. Johnson, now deceased."

None of the defendants filed answer or other pleading, but the issues were joined by the usual court entry.

The case was tried to a court and jury and resulted in a verdict sustaining the will, ten members of the jury signing the verdict.

Motion for new trial was duly filed, thereafter overruled, and judgment entered on the verdict.

Within statutory time the plaintiffs gave notice of appeal on questions of law.

The assignments of error contained eight specifications. These will be taken up separately and in the same order set out in plaintiffs' assignment of errors.

ASSIGNMENT NO. 1

"1. The Court of Common Pleas erred in not setting aside the verdict of the jury herein, for the reason that the verdict of the jury was against the manifest weight of the evidence and contrary to law."

The determination of this ground of error requires a very careful reading of the evidence contained in the bill of exceptions. The case required several days to try, and as a result there is presented to us a record containing 449 pages of typewritten matter. We have carefully read all the evidence, and some portions have been re-read two or three times. The ground of contest was based principally on the claims of mental incapacity and undue influence. To this might be added the contention that the decedent did not read the will, nor was the same read to him, before it was executed. We will only at this time consider the question of mental incapacity, since the issue of undue influence was withdrawn by the trial court from the consideration of the jury and will be discussed under specification of error No. 2; and the claim that decedent did not read or hear the will read to him before execution is presented under Specifications of error Nos. 3 and 4, and will be considered under these numbers.

On the ground of mental incapacity the record presents a typical conflict of evidence, and therefore is purely a jury question, unless the testimony considered in its most favorable light, supporting the verdict and judgment, is so manifestly against the weight of the evidence as to shock the conscience of the court to permit it to stand. We have no difficulty in arriving at the conclusion that no such situation arises in the instant case.

Each side, through the evidence, made a very strong case in support of their respective contentions. It is manifest from the verdict of the jury that plaintiffs failed to establish by the requisite degree of proof that the paper writing was not the last will and testament of the testator. In our study of the record we find ample evidence to support this verdict. Had their verdict been otherwise, we would likewise find sufficient evidence to support it.

We find no error under assignment No. 1.

ASSIGNMENT NO. 2

"2. The Court of Common Pleas erred in withdrawing from the jury for its consideration, the question of undue influence, which was a material part of the case for the plaintiffs, as there was testimony and evidence tending to show undue influence upon the part of those holding confidential relations with the decedent and in a position to exert undue influence."

We learn from the briefs of counsel that they assert the claim of undue influence against three of the legatees under the will, to-wit, Horace L. Stephens, Emma Stephens McCallum and Mary C. Requarth.

That each of the three was in close relation with the decedent, both socially and in a business way, is unquestioned. How-

ever, there is no evidence, either direct or circumstantial, that even hints that either of the three ever talked with the decedent relative to the disposition of his property or knew that he had executed a will.

Horace L. Stephens had been associated with the business of the decedent for probably thirty or more years. He started in as a lad going to school as an errand boy. He was away from the business during the World War. After his discharge from the army he took a position in another state, but returned on request of the decedent. He advanced to the position of supervisor of sales and assistant general manager. The decedent, although president, had not been active in the management of the business for a number of years, but still kept in close touch with it. Stephens was the one individual in the organization that he contacted more than any other. It was his habit to have Stephens at his home on every Saturday to take lunch, when the business affairs would be talked over. It is also shown in evidence that Mr. Johnson at different intervals visited his boyhood home near Burlington. Other trips were also made in an automobile, and most frequently Mr. Stephens was the man who furnished the car and took him where he desired to go.

Emma Stephens McCallum, a sister of Mr. Horace L. Stephens, had been with the organization for a longer period of time than had Mr. Stephens. She had advanced to the position of superintendent of one of the departments. In addition through her work in connection with the corporation, she, at the decedent's request, acted as his private secretary, without compensation. Through this work she necessarily was in close contact with Mr. Johnson.

Miss Mary C. Requart was the trusted housekeeper, and had been with Mr. Johnson in such capacity for a great number of years. The evidence discloses that the decedent was a very positive character. As some witnesses express it "he wanted what he wanted when he wanted it."

One or two witnesses for the plaintiff in cross-examination stated that Mr. Johnson was not easily influenced, and then further volunteered the answer that "some could". In one instance this evidence was ruled out and in another it was not. However, it was not in any way amplified or further evidence presented through which it was disclosed what the witness meant by this. From this close relationship of these three legatees, together with the substantial bequests made to each, plus the testimony of one or two witnesses that "some could" influence Mr. Johnson, counsel urge that the court was in error in taking the element of undue influence from the consideration of the jury.

We are unable to accept this claim of counsel. We recognize the rule as universally held by the courts, that undue influence is rarely possible of proof by direct evidence.

Undue influence is a species of fraud, and people indulging in it do not ordinarily permit others to hear or know their activities calculated to exert an undue influence. Necessarily circumstances are generally the only means and method of proof. When this question is in issue it is always proper to present evidence of close relationship and opportunity to exert undue influence, but neither circumstance alone presents the requisite proof. Apparent acts of kindness and frequent association may be actuated through ulterior motives, and in other circumstances the same conduct would be from the best of motives. Mr. Johnson in his lifetime had been kind and considerate to all three of these legatees, and they in return had reciprocated in kindness. Ample reasons existed for each to have a friendly feeling toward the other.

Mr. Stephens and his sister, through close attention and faithful service in the business had helped Mr. Johnson to make a lot of money out of the business of which he was the head. In return they had received very substantial salaries, and had also acquired some of the stock through which they had profited.

Miss Requarth had evidently been a faithful housekeeper or she would not have retained her position for so many years.

Under this situation we are unwilling to subscribe to the doctrine that the jury should be permitted to consider the question of undue influence. We unhesitatingly conclude that the trial court was right in withdrawing this question from the consideration of the jury.

## ASSIGNMENT NO. 3

"3. The Court of Common Pleas erred in not instructing the jury that decedent should have had some knowledge at least, of the contents of the instrument he was signing in order that it might constitute his last will and testament, and the court further erred in refusing counsel for plaintiffs the right to argue this matter to the jury."

In order to understand how this question arises, it is necessary to relate some of the pertinent facts.

The paper writing purporting to be the will of the decedent was signed in his bedroom at his home. Previously Mrs. McCallum had been requested by telephone to go to Mr. Nolan's office (an attorney) to get an envelope and bring it to Mr. Johnson. This she did, delivering it to the housekeeper, who, in turn, took it to the room. In the room with Mr. Johnson was his nurse, Miss Grace W. Paul. The attending physician, Dr. E. W. Shank, came in about that time on his professional call. Mr. Johnson took the paper out of the envelope and after signing it, asked Miss Paul and Dr. Shank to sign as witnesses to his will, which they did in his presence and in the presence of each other. The evidence indicated that Mr. Johnson did not read the document that morning before he signed it, and from this situation counsel make the claim that the court should have instructed the jury that the decedent should have had some knowledge of the contents of the instrument he was signing in order that it might constitute his last will and testament. A complete answer to this claim is that the court was not requested so to charge █ and any failure so to do would be an act of omission and not error. Had counsel desired an instruction on this question, it was their duty to make request in order to present their claimed error in the record.

On the further claim that the court erred in refusing counsel for plaintiff the right to argue this matter to the jury, we do not think the record will support the contention. On pages 448 and 449 of the record there are a few excerpts from the argument of counsel. As pertinent to the question now under consideration, on page 448 we find the following:

"MR. KREHBIEL: Opening argument to jury on behalf of plaintiffs.

During the course of argument: Never having the will read to him—

MR. KELLY: Objection to that, your honor. There is no proof of that whatever in this case.

MR. LIPPINCOTT: I say there is.

THE COURT: Sustain the objection. There is no evidence.

MR. KREHBIEL: Well, I will put it this way. I say that this evidence shows when the question was asked from the witness stand to those who—

MR. NOLAN: You objected to the answer, Mr. Krehbiel.

MR. KREHBIEL:—were present as attesting witnesses 'was this will read to Mr. Johnson?' And the answer is what, Mr. Kelly? What's the answer, Mr. Kelly?

MR. KELLY: There were only two there. They said they didn't read it to him. You can go that far with it.

MR. KREHBIEL: The answer was, it was not read to him and that is the day he signed it. Is that or is that not true? Am I right or wrong? That is up to you. You heard the testimony. Am I misquoting or not?"

The only objection we find by the court is following the statement of Mr. Krehbiel, "Never having the will read to him." Upon objection by counsel for the defendants, the court stated "there is no evidence," and in that the court was absolutely correct. Following this, counsel correctly did state to the jury the situation as it was presented through the evidence.

We find no error under assignment No. 3.

## ASSIGNMENT NO. 4

"4. The verdict of the jury should have been for the plaintiffs and should have held that the alleged last will and testament was not the last will and testament of decedent, for the reason there was no evidence showing that decedent ever knew the contents of said alleged last will and testament or that he ever read the same, or that it was ever read to him before signing the same, and consequently the verdict should have been for the plaintiffs and against the defendants in the lower court."

There is a presumption of law that every person signing a document understands its contents. This presumption applies as to last wills and testaments. In the instant case the evidence amply and uncontradictedly supports the fact that Mr. Johnson signed the written instrument. The burden is upon the contestants to show that he did not read it or did not know its contents. **Morris v Osborne et, 27 O.C.A. 161.**

While the burden on this question never changes, yet the evidence that the testator did not know the contents of the instrument may first be presented through witnesses called by the proponents of the will. The fact that the testator did not read

the document or have it read to him on the morning he signed it, does not necessarily establish that he did not know its contents. He may have read it and reread it on numerous occasions before that morning. If so, the cursory examination that he made before signing would be all he would desire to do. This cursory examination would completely identify it. He sent for the paper, and therefore must have known about it.

We find no error in assignment No. 4.

### ASSIGNMENT NO. 5

"5. That the Court of Common Pleas in permitting the defendants below to introduce and enlarged photograph of decedent taken quite a period of time after decedent had signed his alleged last will and testament."

In support of this assignment counsel for contestants cite the case of **Varner v Varner, 16 C.C. 386.**

The second syllabus of this case, which is in point, is not supported by the opinion. It is true that the syllabus of cases decided by the Supreme Court state the law of the case. This is not necessarily true of decisions of the Circuit Court, nor in all instances, of the Court of Appeals. Under the regime of the old Circuit Court, the syllabus was generally written by the editor and not by the court. The opinion in the Varner case discloses that their judgment was based on the fact that the photograph was not identified. In the instant case, while the photograph was not identified by the photographer, it was by the witness, who knew the decedent and stated that the photograph was a correct likeness. This would be sufficient identification. If syllabus No. 2 intended to state the law of that case, we are unwilling to follow it as a general proposition. We do not think it was error for the court in its discretion to permit the introduction of the photograph, particularly in view of the evidence that was presented by the contestants as to the general appearance of the decedent. In any event, it surely would not be prejudicial.

### ASSIGNMENT NO. 6

"6. The Court of Common Pleas erred in giving the special charges to the jury, over the objection and exception of plaintiffs at the time of the trial."

The trial court, at the request of counsel for the proponents of the will, gave to the jury, in writing, before argument, three separate and distinct special charges. We ascertain from the brief of counsel, that they objected to the charge of the court relative to hypothetical questions. This charge is as follows:

"No. 2. Hypothetical questions, that is questions based on supposition, have been propounded to expert witnesses. In order that this testimony shall be of any value, all of the assumed facts forming the basis of such opinion should be found by you to be true. The truth of each supposition in the question contained is for your determination from the evidence. To illustrate a little further the purpse and effect of hypothetical questions: Counsel puts a question to a witness, containing a number of hypotheses or assumptions, and from the assumptions relating each to the other, the witness expresses an opinion. Each and every assumption is presumed to be weighed and considered by the expert when he makes his answer. His answer is based on the truth of every assumption in the question propounded. If any assumption is not warranted, then his answer is of no value."

This charge was taken from the volume of "Weygandt's Ohio Charges" at page 381, being charge No. 1334-B. It is credited with being built up from the case of **Rogers v Monroe, 29 C.D. 558** ,and the case of Bleickner v C. P. & E. R. R., being a charge of Judge Hornbeck while acting as judge of the Common Pleas Court.

We find nothing objectionable in this charge. In our experience it is in substance the same as is generally used.

### ASSIGNMENT NO 7

"7. That the Court of Common Pleas erred in permitting evidence to go to the jury; prejudicial to the rights of the plaintiffs below and objected and excepted to at the time of the ↲rial by the plaintiffs and particularly, in permitting the attorney who drew the alleged will for decedent to identify it from the witness stand, over the objection and exception of the plaintiffs."

In support of this claimed error, counsel ·for contestants cite and rely on the case of **Collins v Collins, 110 Oh St 105,** syllabus 3. This syllabus reads as follows:

"3. The terms of §11494 GC, preventing an attorney from testifying concerning communications made to him by his client in that relation, or concerning his advice to the client, preclude him, in a proceeding to contest the will or codicil of his client, from testifying to matters which he must necessarily have learned by communications from his client, and to matters that relate directly to communications made and advice given while the relation of attorney and client existed. He is not, however, precluded from testifying, the same as any other witness might when he is a subscribing witness to such will or codicil."

The issue in the Collins case was quite different from the instant case. In the reported case it was sought to revive a revoked will. No such issue was present in the instant case. Mr. Nolan, an attorney at law in Dayton, Ohio, was called as a witness and the following question propounded to him:

"Q. I will ask you—withdraw that question. I am handing you, Mr. Nolan, Mr. Johnson's will, introduced in the case as defendant's Exhibit B, and ask you whether or not you prepared that will?"

Objection was interposed and overruled. The witness answered "I did."

This is claimed to be error and violative of §11494, GC. The pertinent portion of this section reads as follows:

"Sec 11494 GC. Privileged communications and acts. The following persons shall not testify in certain respects:

"1. An attorney concerning a communication made to him by his client in that relation, or his advice to his client."

Under the state of the record in the instant case, we are unable to conclude that the statute was violated through the court's permission for the witness to answer the question that he prepared the will.

## ASSIGNMENT NO 8.

"8. That the Court of Common Pleas erred in overruling the motion of plaintiffs below for a new trial, for the reasons set forth in said motion."

This assignment is all inclusive and presents no question other than those already discussed.

We find no prejudicial error, and there-fore, the judgment of the trial court will be affirmed.

HORNBECK and GEIGER, JJ, concur.